# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF LOUISIANA
# LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **MICHAEL MOLITOR** § | | **CIVIL ACTION NO. 2:24-cv-00114** |
| *Plaintiff* § | | |
| § | | **JUDGE JAMES D. CAIN, JR.** |
| **VS.** § | | |
| § | | **MAGISTRATE JUDGE LEBLANC** |
| **THE CITY OF SULPHUR** § | | |
| *Defendant* § | | **JURY DEMANDED** |

## PLAINTIFF'S FIRST SUPPLEMENTAL AND AMENDING COMPLAINT

**NOW INTO COURT**, through undersigned counsel, comes Plaintiff, **MICHAEL MOLITOR**, an individual of the full age of majority and resident of Sulphur, Louisiana (hereinafter "Plaintiff"), who brings the following First Supplemental and Amending Complaint against Defendant, **THE CITY OF SULPHUR**. Plaintiff respectfully avers as follows:

## JURISDICTION AND VENUE

1. Plaintiff brought his Original Petition in the 14th Judicial District Court for the Parish of Calcasieu, State of Louisiana, alleging violations of the First Amendment to both the Louisiana and United States Constitutions. Defendant removed the matter pursuant to 28 U.S.C. § 1441 on January 29, 2024 [D.E. 1].

2. Plaintiff now additionally brings this action under the Americans with Disabilities Act of 1990 ("ADA"), as it appears at 42 U.S.C. § 12101 *et seq*.

3. This Court has jurisdiction pursuant to the following statutes:

    a. 28 U.S.C. § 1331, which gives district courts original jurisdiction over civil actions arising under the Constitution, law or treaties of the United States; and

    b. 28 U.S.C. § 1343 (3) and (4), which give district courts jurisdiction over actions to secure civil rights extended by the United States government.

    c. 28 U.S.C. § 1367, which gives district courts supplemental jurisdiction over Plaintiff's Louisiana state law claims rising from the same facts and circumstances giving rise to Plaintiff's federal causes of action.

4. Plaintiff filed a charge with the Equal Employment Opportunity Commission (EEOC) prior to instituting action. Plaintiff signed the formal EEOC Charge on or about March 28, 2023 (Charge No. 461-2023-01582).

5. Plaintiff received his Determination and Notice of Rights on or about April 9, 2024. *See* Exhibit A. Plaintiff is afforded 90 days from his receipt of such Notice to commence suit with respect to his ADA claims, and the date of this filing is within the statutory period.

6. Venue is appropriate in this judicial district under 28 U.S.C. § 1391 (b) because the events that gave rise to this Complaint occurred in the Western District of Louisiana, specifically in Calcasieu Parish, making the Lake Charles Division the most appropriate Division for this suit. Defendant suspended, demoted, and otherwise subjected Plaintiff to the adverse actions alleged herein out of its Sulphur, Louisiana facility, which is located within the Parish of Calcasieu, State of Louisiana.

## PARTIES

1. Plaintiff, **MICHAEL MOLITOR,** is an individual of the age of majority who is domiciled in Sulphur, within the Parish of Calcasieu, State of Louisiana.

2. Defendant, **THE CITY OF SULPHUR** ("the City"), a municipal corporation organized and existing under the domestic laws of the State of Louisiana. Its principal place of business is located in the city of Sulphur, Parish of Calcasieu, State of Louisiana. All of the alleged acts occurred during Plaintiff's employment with the City of Sulphur Police Department.

3. All Defendants in this suit, which are named now, in the past, or to be named in the future, are justly and truly indebted, individually and *in solido*, unto Plaintiff for such sums and damages owed by any and all of their acts or omissions as discussed herein and/or discovered through the pendency of the litigation at hand.

4. At all times relevant to the instant suit, Plaintiff worked for Defendant at its Sulphur, Louisiana location, which is located within the Parish of Calcasieu, State of Louisiana.

## FACTUAL ALLEGATIONS

5. Plaintiff began his employment with the City of Sulphur, through the City of Sulphur Police Department, as a Police Officer on April 21, 2003. Plaintiff was promoted to Sergeant in approximately December 201 and, on approximately July 1, 2015, was promoted to Patrol Captain. At the time of the acts alleged herein, Plaintiff served as a Patrol Captain.

6. During the relevant timeframe, Plaintiff engaged in a polyamorous relationship.

7. Plaintiff's engagement in a polyamorous relationship was well-known to Defendant as of approximately 2019. Not only did Plaintiff openly state that he was in a polyamorous relationship, but Plaintiff would bring both his wife and girlfriend to various City events, and he would oftentimes stop by his girlfriend's home while on break from his shift.

8. In approximately 2019, upon Defendant learning of Plaintiff's polyamorous relationship, Defendant issued Plaintiff a reprimand for parking in the driveway of his then-girlfriend during his lunch hour and a few times throughout the day.

9. In approximately 2020, Plaintiff, as Captain, supervised a former Sulphur Patrol Officer, Sean Smith ("Mr. Smith"). After Mr. Smith experienced COVID-19 symptoms in July 2020, the City refused to return Mr. Smith to work unless he submitted to a blood (serology/antibody) test, which Mr. Smith argued was an illegal medical examination in violation of the ADA. In defense of Mr. Smith, and upon agreeing with Mr. Smith that the City could not force Mr. Smith to submit to an antibody test as opposed to a swab test to determine whether the virus was still active or contagious), Plaintiff spoke to Lewis Coats, Craig Fortenberry, and Larry Guillotte and expressly informed them that the City's actions with respect to Mr. Smith were illegal.

10. The City placed Mr. Smith on an indefinite, unpaid medical leave of absence until he agreed to submit to the serology test. Because Mr. Smith felt that the City was forcing him to choose between submitting to an ADA-violative examination and his employment, Mr. Smith resigned his employment, claiming that he was constructively discharged for his refusal to submit to an unlawful medical examination.

11. Mr. Smith subsequently filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission regarding the ADA violation, and thereafter filed a lawsuit, captioned *Sean C. Smith v. The City of Sulphur*, Civil Action No. 2:22-cv-00244, in the U.S. District Court for the Western District of Louisiana on January 27, 2022.

12. Longtime Chief of Police, Lewis Coats, retired in approximately June 2022.

13. On August 4, 2022, counsel for Mr. Smith requested depositions of the following: 1) Connie Deville; 2) Lewis Coats; 3) Craig Fortenberry; and 4) Larry Guillotte.

14. On August 31, 2022, Plaintiff's name was disclosed to counsel for the City as part of Plaintiff's Initial Disclosures in the *Smith* matter. That same day, Smith's counsel also identified Plaintiff as a fact witness in Smith's discovery responses. Defendant, it its own

Initial Disclosures dated August 31, 2022, also listed Plaintiff as an individual "likely to have discoverable information."

15. The Court issued a Scheduling Order in the *Smith* matter on September 1, 2022.

16. Counsel for Mr. Smith followed up regarding the scheduling of the City witness depositions on September 9, 2022.

17. Plaintiff was asked to apply for the Chief position, and Plaintiff scored the highest on the written test out of the approximately eight (8) candidates who applied. Notwithstanding Plaintiff's high score, following an interview with Mayor Mike Danahay, Connie DeVille, Jennifer Thorn, and two (2) city counsel members, Plaintiff was not selected for the Chief position. Instead, the City selected John Wall ("Chief Wall"), who assumed the position on or about September 24, 2022.

18. Counsel for Mr. Smith followed up again regarding the scheduling of the City witness depositions on October 10, 2022.

19. On October 19, 2022, Chief Wall conducted a supervisory meeting with all Department sergeants and captains, including Plaintiff. During the meeting, Chief Wall indicated that "the days of sitting up are over," and he instructed all captains and sergeants to patrol neighborhoods on a more frequent basis.

20. At no time during the supervisory meeting did Chief Wall indicate a certain amount of time (in minutes, hours, etc.) per shift that a supervisor had to patrol. Similarly, Chief Wall did not ever indicate a percentage of shift time that a supervisor had to patrol. As such, while Chief Wall instructed captains and sergeants to patrol "more," Chief Wall did not ever indicate what satisfied his definition of "more."

21. On or about November 1, 2022, Chief Wall instructed Major Craig Fortenberry ("Maj. Fortenberry") to "spot check" supervisors to determine whether they were patrolling neighborhoods on a more frequent basis. Maj. Fortenberry found that all four (4) captains, including Plaintiff, were excessively "parking up" (i.e., not patrolling), and he reported the same back to Chief Wall.

22. Despite all of the captains being found to have not patrolled enough to satisfy Chief Wall's undefined instruction of "more," Wall issued three (3) of the four (4) captains counseling sheets.

23. Counseling sheets are not formal reprimands, they do not go into an officer's personnel file and, if the officer goes a year without an infraction, the counseling sheet is thrown out or otherwise destroyed.

24. In contrast to the other three (3) captains, Chief Wall instructed Maj. Fortenberry to launch an Internal Affairs ("IA") investigation into Plaintiff. Plaintiff was notified on November 29, 2022 that he was being investigated for his "patrol activities" between October 1, 2022 and November 13, 2022. The Notice of Investigation indicates that the investigation began on November 15, 2022.

25. On or about December 1, 2022, counsel for the City confirmed deposition dates in the *Smith* matter for February 1, 2023 and February 17, 2023.

26. On or about December 6, 2022, Plaintiff was called into a meeting with Maj. Gully and Maj. Fortenberry regarding the IA investigation.

27. On December 14, 2022, Plaintiff received a Notice of Pre-Disciplinary Loudermill Hearing, which notified him of the hearing set to take place to take the following day, December 15, 2022.

28. Following the Loudermill hearing, Chief Wall issued Plaintiff a Notice of Disciplinary Action on December 28, 2022. The disciplinary action included: 1) an unpaid, 14-day suspension; 2) a demotion from Captain to Sergeant; 3) mandatory EAP counseling; and 4) a blanket prohibition against Plaintiff going to the Croker Street address known to be the residence of his former girlfriend.

29. On January 2, 2023, Plaintiff appealed to the Civil Service Board.

30. On January 4, 2023, Plaintiff was contacted by the Civil Service Secretary, at which time Plaintiff learned that he was not being charged with any violation of La. R.S. 33:2500. In response, Plaintiff tendered a motion to dismiss the disciplinary charges because he had not been found in violation of La. R.S. 33:2500.

31. On January 5, 2023, the Civil Service approved Plaintiff's civil service appeal; however, because the Personnel Action Form did not charge Plaintiff with any violation of La. R.S. 33:2500, the Civil Service Board sent the form back to the City so they could re-file it and add more charges. The Board heard said appeal on January 30-31, 2023.

32. Following a multi-hour hearing, the Civil Service Board unanimously voted to: 1) overturn Plaintiff's suspension, demotion, and prohibition against the Coker St. address; 2)

5

compensate Plaintiff for any back pay due as a result of the suspension and demotion; and 3) uphold the requirement that Plaintiff attend EAP counseling.

33. The parties reached settlement in the *Smith* matter in principle on or about February 13, 2023, when the Board approved the proposed terms at its normal meeting.

34. Almost immediately thereafter, Defendant filed a Notice of Appeal to the 14th Judicial District Court, therein submitting that the Civil Service Board's decision was manifestly erroneous and that Plaintiff's suspension, demotion, and prohibition re: Coker St. should be reinstated. The district court reversed the Board, and Plaintiff appealed. The Louisiana Court of Appeal for the Third Circuit declined to exercise its supervisory jurisdiction, and Plaintiff filed a petition for writ of certiorari and/or review with the Louisiana Supreme Court, which remains pending at this time.

35. On March 28, 2023, Plaintiff filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC"). Therein, Plaintiff alleged that Defendant unlawfully discriminated against him on the basis of sex, as well as retaliated against him based on statements he made in support of a former officer on disability-related matters, in violation of Title VII of the Civil Rights Act of 1964 and the Americans with Disabilities Act of 1990.

---

### CAUSE OF ACTION NO. 1
*Free Speech/Expression/Viewpoint Retaliation/Discrimination*
In violation of the First Amendment(s) to the United States and Louisiana Constitution

---

36. Plaintiff restates and realleges all previous paragraphs as if fully set forth herein.

37. As an employee of the City of Sulphur, Plaintiff is a public employee.

38. During the relevant timeframe, Plaintiff engaged in a polyamorous relationship. Defendant gained actual knowledge of the relationship in approximately 2019.

39. The First Amendment of the United States Constitution provides, "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." Article I, § 7 of the Louisiana State Constitution provides, "No law shall curtail or restrain the freedom of speech or of the press. Every person may speak, write, and publish his sentiments on any subject, but is responsible for abuse of that freedom."

40. On several instances throughout his employment, Plaintiff openly discussed his engagement in a polyamorous relationship. These declarations, which touch on a matter of public concern, are protected under the First Amendment. See, e.g., *Williams v. Fontanez*, 2023 WL 3819296 (D. Md. June 5, 2023).

41. In addition to his repeated statements and discussions about his polyamorous relationship, Plaintiff also openly traveled to and spent time at the address of his former girlfriend, and he brought both his wife and former girlfriend to various Department and/or City events. Plaintiff's conduct, which is inherently expressive, was intended to convey Plaintiff's particularized message, i.e., that he engaged in polyamorous relationships. As evidenced by comments made by the now-Police Chief, John Wall, Plaintiff's conduct was well understood to express his views on polyamorous relationships.

42. By virtue of both his demotion and 14-day suspension on December 28, 2022, Plaintiff suffered at least two (2) adverse employment actions.

43. Defendant's adverse employment decision was highly motivated by Plaintiff's protected speech/conduct. First, during the Hearing on Plaintiff's Civil Service Appeal, Chief Wall openly admitted that he made the decision to discipline Molitor because of his engagement in a polyamorous relationship, in addition to Molitor's 2019 discipline, which was also directly attached to his polyamorous relationship. In support of the disciplinary decision, Chief Wall stated, "if you're on duty, I don't believe the perception that you have [been] stopping by where most people know at one point that was your girlfriend is not a picture that the police department wants."

44. Additionally, there is very close temporal proximity between John Wall assuming the position as Chief of Police and the decision to suspend and demote Plaintiff. Thus, as soon as Chief Wall gained the ability to influence officer demotion, suspension, and/or other disciplinary decisions, Chief Wall targeted Plaintiff for discipline.

45. Any proffered legitimate basis for demoting and/or suspending Plaintiff is pretextual. While Defendant originally argued that it disciplined Plaintiff for "shirking duties," Defendant admitted during the Civil Service Board hearing that Plaintiff did not actually "shirk" or otherwise attempt to avoid his supervisory duties in any way.

46. Additionally, while all four (4) captains were found to have failed to meet Chief Wall's instruction to patrol "more," Chief Wall simply counseled the other three (3) captains,

whereas he altogether demoted and suspended Plaintiff. As such, Defendant treated similarly situated employees outside the protected class, who engaged in identical behavior of "sitting up" or "parking up" (i.e., not patrolling "enough") used to discipline Plaintiff, far more favorably than Plaintiff.

47. During the Civil Service Board hearing, Chief Wall admitted that his disciplinary decisions with respect to Plaintiff were driven, at least in part, by Plaintiff's engagement in a polyamorous relationship.

48. Defendant's conduct is willful, intentional, and committed with malice or reckless indifference to the protected rights of Plaintiff.

49. As a result of Defendant's retaliatory/discriminatory conduct, Plaintiff has suffered non-pecuniary losses including but not limited to emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses to be more fully developed at the trial on this matter.

50. As it currently stands, as a result of Defendant's retaliatory/discriminatory conduct, Plaintiff has also suffered monetary losses, in the form of lost pay and benefits.

51. **WHEREFORE**, Plaintiff prays that Defendant be found liable for demoting him and suspending him in retaliation for his free speech and/or expression in violation of La. Const. Art. 1, section 7 and U.S. Const. Amend. 1.

---

### SECOND CAUSE OF ACTION
*Retaliation*
In violation of 42 U.S.C. § 12203(a)

---

52. Plaintif restates and realleges all previous paragraphs as if fully set forth herein.

53. 42 U.S.C. § 12203(a) provides that no personal shall discriminate against any individual because he "has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter."

54. Defendant is an "employer" for purposes of the ADA because, for at least twenty (20) calendar weeks in 2019, 2020, 2021, 2022, and/or 2023, Defendant employed at least fifteen (15) employees.

55. Plaintiff engaged in protected opposition activity by speaking with Smith regarding the City's request that he submit to a serology test as a term of continued employment, agreed

that the serology test violated the ADA, and thereafter verbally opposing the conduct to several City officials, including Lewis Coats, Craig Fortenberry, and Larry Guillotte. The Fifth Circuit has held that "employee opposition to discriminatory employment practices directed against a fellow employee may constitute activity protected." *Turead v. Grambling State Univ.,* 294 Fed. Appx. 909, 913-14 (5th Cir. 2008) (quoting *Jones v. Flagship Int'l,* 793 F.2d 714, 727 (5th Cir. 1986)). By opposing the discrimination he believed that Smith had experienced in a meeting with the former Chief of Police and two Majors, Plaintiff engaged in protected opposition activity under the ADA.

56. Plaintiff also engaged in protected participation activity by offering to testify in support of Smith's discrimination suit, irrespective of whether he was ultimately called to testify as a witness. Plaintiff openly communicated and collaborated with Smith, such that Smith candidly named Plaintiff as a voluntary and favorable witness. See, e.g., *Crevier-Gerukos v. Eisai, Inc.,* 2013 WL 12137089 (S.D. Tex. Jun. 24, 2013) (citing *Jute v. Hamilton Sundstrand Corp.,* 420 F.3d 166 (2d Cir. 2005)).

57. By virtue of both his demotion and 14-day suspension on December 28, 2022, Plaintiff suffered at least two (2) adverse employment actions. While the Civil Service Board voted to overturn these disciplinary decisions, the City appealed the Board's decision to the 14th JDC, who, in turn, reversed the Board and upheld the City's original disciplinary action.

58. The individuals involved in the decision to discipline Molitor had knowledge of his protected activity. Maj. Fortenberry, whose investigation and opinions influenced Chief Wall's disciplinary decisions with respect to Plaintiff and the other captains, was one of the individuals to whom Plaintiff openly and verbally opposed the discriminatory actions being taken with respect to Smith.

59. Additionally, prior to assuming the role as Chief of Police in September 2022, Chief Wall had served as both a Sergeant and Police Captain for the City of Sulphur. Chief Wall learned of Plaintiff's discussions with City management regarding Smith's ADA concerns prior to Smith's constructive discharge while serving as Plaintiff's co-worker and another Patrol Captain. Moreover, as Chief of Police, Chief Wall was apprised of ongoing litigation against the City, including the *Smith* matter, which was actively litigated between the parties from August 2022 through its ultimate resolution in February 2023.

60. A causal connection exists between Plaintiff's protected activity and the decision to suspend and demote him.

61. First and foremost, because Chief Wall did not have any decision-making authority over Plaintiff until becoming Chief of Police, the earliest that Chief Wall could exercise any discriminatory or retaliatory animus against Plaintiff was September 24, 2022.

62. By November 1, 2022 – approximately five (5) weeks after becoming Chief – Chief Wall had instructed Maj. Fortenberry (an individual to whom Plaintiff openly reported perceived discrimination against Smith) to review Captain time sheets. Then, by November 15, 2022, Chief Wall had authorized an IA investigation (which included Maj. Fortenberry) into Plaintiff, despite the fact that Maj. Fortenberry had found that all Captains subject to the October 19, 2022 order had failed to patrol sufficiently "more."

63. The temporal proximity between Wall's appointment to the Chief position and launching the investigation into Plaintiff is sufficiently close to establish a *prima face* case of causation. See, e.g., *Garcia v. Prof's Contract Servs.,* 938 F.3d 236, 241-43 (5th Cir. 2019) (holding that temporal proximity of approximately two months was enough to establish a causal connection). This is especially true when considering Chief Wall's reliance on the investigation and opinions of Maj. Fortenberry, who was a party to Plaintiff's previous protected activity.

64. Moreover, the approximately three (3)-month temporal proximity between Wall's appointment as Chief and deciding that Plaintif should be demoted and suspended, among other things, is, again, sufficiently close to establish a *prima facie* case of causation. The decision to discipline Plaintiff in this manner took place between the Loudermill Hearing on December 15, 2022 and the Notice of Disciplinary Action handed to Plaintiff on December 29, 2022.

65. Causal connection is furthered by the fact that Chief Wall relied upon the investigation and opinions of Maj. Fortenberry, who was a party to Plaintiff's protected opposition activity.

66. As additional evidence of the causal link between Plaintiff's protected activity and disciplinary action, the City's proffered legitimate basis for demoting and/or suspending Plaintiff is pretextual. While Defendant originally argued that it disciplined Plaintiff for "shirking duties," Defendant admitted during the Civil Service Board hearing that Plaintiff did not actually "shirk" or otherwise attempt to avoid his supervisory duties in any way.

67. Additionally, while all four (4) captains were found to have failed to meet Chief Wall's instruction to patrol "more," Chief Wall simply counseled the other three (3) captains, whereas he altogether demoted and suspended Plaintiff. As such, Defendant treated similarly situated employees outside the protected class (i.e., who did not engage in protected ADA activity), who engaged in identical behavior of "sitting up" or "parking up" (i.e., not patrolling "enough") used to discipline Plaintiff, far more favorably than Plaintiff.

68. Moreover, while the Civil Service Board overturned the decision to demote and suspend Plaintiff, the City appealed the decision on or about February 14, 2023, the day after the Civil Service Board approved the proposed settlement terms of the *Smith* matter.

69. But for Plaintiff's protected activity, Defendant would not have subjected Plaintiff to far more severe disciplinary action than that of the other Captains found to have engaged in nearly identical behavior.

70. Defendant's conduct is willful, intentional, and committed with malice or reckless indifference to the protected rights of Plaintiff.

71. As a result of Defendant's retaliatory/discriminatory conduct, Plaintiff has suffered non-pecuniary losses including but not limited to emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses to be more fully developed at the trial on this matter.

72. As a result of Defendant's retaliatory/discriminatory conduct, Plaintiff has also suffered monetary losses, in the form of lost pay and benefits.

73. **WHEREFORE**, Plaintiff prays that Defendant be found liable for demoting him and suspending him in violation of the Americans with Disabilities Act of 1990, as amended.

---

**PRAYER**

---

**WHEREFORE**, Plaintiff, **MICHAEL MOLITOR**, requests that this Honorable Court enter judgment against Defendant providing the following relief:

(a) All damages to which Plaintiff may be entitled, including but not limited to back pay, reimbursement for lost position and training, social security and other benefits, front pay, and any and all statutory relief;

(b) Punitive or exemplary damages;

(c) Compensatory damages;

(d) Reasonable attorney's fees, with conditional awards in the event of appeal;

(e) Pre-judgment interest at the highest rate permitted by law;

(f) Post-judgment interest from the judgment until paid at the highest rate permitted by law;

(g) Costs, including expert fees;

(h) Reasonable and necessary medical care and expenses in the past and future;

(i) Mental anguish damages in the past and future;

(j) Injunctive relief; and

(k) Such other and further relief, at law or in equity, to which Plaintiff may be entitled.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of Federal Rules of Civil Procedure, the Plaintiff demands trial by jury in this action of all issues so triable.

**Respectfully Submitted**,

**SUDDUTH & ASSOCIATES, LLC**
1109 Pithon Street
Lake Charles, Louisiana 70601
Tel: (337) 480-0101
Fax: (337) 419-0507
Email: james@saa.legal
Email: kourtney@saa.legal

**BY:**   */s/ James E. Sudduth, III*
**JAMES E. SUDDUTH, III (#35340), T.A.**
**KOURTNEY L. KECH (#37745)**
*Counsel for Plaintiff*